UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RONALD E. DAVIS,<br>  Plaintiff,<br><br>v.<br><br>DOMINION DIAGNOSTICS, LLC,<br>  Defendant. | )<br>)<br>)<br>)<br>) C.A. No. 16-cv-424-MSM-LDA<br>)<br>)<br>)<br>) |

### MEMORANDUM AND ORDER

MARY S. MCELROY, United States District Judge.

  Ronald E. Davis brings this action against his former employer, Dominion Diagnostics, LLC ("Dominion"), alleging hostile work environment, disparate treatment, retaliation, and constructive discharge in violation of 42 U.S.C. § 1981 and the Rhode Island Civil Rights Act of 1990 ("RICRA").(ECF No. 1).  After the completion of discovery, Dominion filed this Motion for Summary Judgment (ECF No. 38) to which Mr. Davis objects. (ECF Nos. 42, 43).

### I. FACTS

  Mr. Davis, who is African American, was hired by Dominion as a Call Center Representative in 2006. (ECF No. 39).  During his time at Dominion, Mr. Davis endured multiple instances of racially offensive conduct.  Beginning in 2010, the day after Mr. Davis' birthday, an email titled "Cleveland's birthday party"[1] was circulated via company email.  The email contained racist jokes and images that

---

[1] "Cleveland" is the name of a fictional African American cartoon character.

were directed at Mr. Davis and his family.² (ECF No. 45). Another employee who received the email, Kenneth Benson, reported it to human resources and two other Dominion employees, Nicholas DiBiasio and Edgar Orellena, were held responsible and were issued written warnings. (ECF No. 39).

In November 2011, an email containing racist comments about then-President Barack Obama and presidential candidate Herman Cain was circulated to a number of Dominion employees by employee John Spagnolo. (ECF No. 45). Mr. Davis reported the email and Mr. Spagnolo received a written warning. (ECF No. 39).

In 2014, Mr. Davis had an argument with a Dominion sales representative who was based in Georgia, and who had used racist language in criticizing Mr. Davis. Mr. Davis reported this conduct to Dominion's Chief Executive Officer and the sales representative was terminated the next day. (ECF No. 39).

Late in 2015, after learning about the 2010 email that Mr. DiBiasio circulated, Mr. Davis spoke about it to Sheri Machado, Dominion's Human Resources Director, and his supervisor Alison Lavoie. Mr. Davis claims that Ms. Lavoie was dismissive towards his complaint, stating that it had previously been addressed. (ECF No. 45). He also claims to have asked Ms. Lavoie if she believed he was an "animal" or "less than a human being," to which, he claims, she did not respond. Mr. Davis asked Ms. Machado to prevent any further contact between him

---

² Mr. Benson told Mr. Davis about this email in 2015. ECF No. 39.

and Mr. DiBiasio. He maintains, however, that despite this request, he still had daily contact with Mr. DiBiasio.

Ms. Lavoie retired at the end of 2015. (ECF No. 39). Following her retirement, Dominion created a new position entitled "Manager of Customer Support Services," which was offered to Kelly McKenna. This position was not posted, and Mr. Davis was not offered an opportunity to interview for it. (ECF No. 39).

In early February 2016, Mr. Davis requested medical leave under the Family and Medical Leave Act (the "FMLA"). (ECF No. 39). In support of his request, Mr. Davis' medical provider sent a note stating that he should remain out of work from February 1, 2016 to February 11, 2016. Dominion received a subsequent note from Mr. Davis' medical provider, supporting an extension of the leave until March 13, 2016. Thereafter Mr. Davis' medical provider continued to send notes to Dominion to extend his leave until May 29, 2016. By the end of June 2016, Mr. Davis had not returned to work. Dominion informed him that it could no longer hold open his position. Despite Dominion sending several letters during the spring of 2016 and holding his position beyond the period required by the FMLA, Mr. Davis did not return to work. In this lawsuit, he now claims that he was constructively discharged.

## II. STANDARD OF REVIEW

When making a summary judgment determination, the Court reviews the entire record and considers the facts and inferences in the light most favorable to

the nonmoving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Summary judgment is warranted when "the pleadings [and discovery], together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing Fed. R. Civ. P. 56(c)). A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Id.* at 50.

## III. DISCUSSION

### A. Statute of Limitations

Before delving into the substance, the Court must address Dominion's argument that Mr. Davis' hostile work environment claim must be dismissed because the 2010 and 2011 conduct supporting his claim occurred more than three years before he filed suit and is thus barred by the statute of limitations. (ECF No. 38). In response to this argument, Mr. Davis notes that Federal Rule of Civil Procedure 8(c) requires a party "in responding to a pleading" to state "any . . . affirmative defenses, including . . . statute of limitations," and Dominion did not do so. (ECF No. 43). Mr. Davis argues that, because of Dominion's failure to raise this affirmative defense, he could not structure his discovery strategy to address this issue. Alternatively, Mr. Davis argues that, even if Dominion had properly raised its statute of limitations argument, his claims are not time-barred because of the discovery rule. *Id.*[3]

---

[3] Dominion seemed to concede this point during oral arguments.

The Court agrees with Mr. Davis in rejecting Dominion's statute of limitations argument. Dominion is required under Federal Rule of Civil Procedure 8(c) to raise affirmative defenses, including statute of limitations in its responsive pleading. An affirmative defense not raised in an answer is deemed waived, unless one of two exceptions is satisfied: (1) if "the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay," or (2) "the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed." *O'Brien v. Town of Bellingham*, 943 F.3d 514, 528 (1st Cir. 2019) (internal quotation marks and citations omitted). Neither of these exceptions applies here. Dominion did not assert the defense without undue delay and instead waited until after discovery closed, leaving Mr. Davis without a chance to specifically address this defense through deposition testimony. Dominion does not claim an exemption due to late obtaining of the circumstances.

### B. Hostile Work Environment

To state a prima facie case of hostile work environment, a plaintiff must show that (i) he is a member of a protected class, (ii) he faced unwelcome harassment, (iii) the harassment was based on race, (iv) the harassment was sufficiently severe or pervasive to alter the terms/conditions of plaintiff's employment, (v) the conduct was both objectively and subjectively offensive, and (vi) some basis for employer liability has been established. *O'Rourke v. City of Providence*, 235 F.3d 713, 728–29 (1st Cir. 2001). It is undisputed that Mr. Davis is a member of a protected class;

that he considered the alleged conduct unwelcome; and that the alleged harassment was racially based.  The first three elements of a prima facie claim are met.

"In hostile environment cases, the fourth and fifth elements are typically the most important."  *O'Rourke*, 235 F.3d at 728–29.  "They must be determined by the fact-finder in light of the record as a whole and the totality of the circumstances."  *Id.* (internal quotation marks and citations omitted).  "Several factors typically should be considered in making this determination: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88 (1998)).  "There is no mathematically precise test to determine whether [a plaintiff] presented sufficient evidence that [he] was subjected to a severely or pervasively hostile work environment.  *Pomales v. Celulares Telefonica, Inc.,* 447 F.3d 79, 83 (1st Cir. 2006) (citing *Kosereis v. Rhode Island,* 331 F.3d 207, 216 (1st Cir.2003)).  "Because this inquiry is fact specific, the determination is often reserved for a fact-finder."  *Id.* (internal quotation marks and citations omitted).

Viewing the evidence in the light most favorable to the nonmovant, Mr. Davis, the Court finds that a genuine dispute of material facts exists as to whether the harassment was sufficiently severe or pervasive to alter the conditions of Mr. Davis' employment and whether the conduct is both subjectively and objectively offensive.  In defending this claim, Dominion notes that Mr. Davis was unaware of

some of the offensive conduct when it occurred and that the conduct he was aware of was either addressed by Dominion or of a manner not offensive enough to maintain a hostile work environment claim. (*See* ECF No. 38 at 6-8). But Dominion misses the crux of Mr. Davis' argument—that the multiple instances of offensive behavior of which he was aware, coupled with the instances he learned of in 2015, and the perceived lack of adequate remedial action by Dominion after he complained, created the hostile work environment for him. Reviewing the record as a whole and considering the totality of the circumstances, these issues must be determined by the jury. *See O'Rourke*, 235 F.3d at 729; *see also Hernandez–Loring v. Universidad Metropolitana,* 233 F.3d 49, 54–56 (1st Cir. 2000) (evidence of two specific incidents of harassment in the context of an ongoing pattern of conduct sufficient to survive summary judgment in hostile work environment claim).

As for the sixth element, because Mr. Davis contends that Dominion failed to adequately address his complained of harassment, the jury should be allowed to determine whether Dominion is responsible. *See White v. New Hampshire Dep't of Corr.*, 221 F.3d 254, 261 (1st Cir. 2000) (finding employer liability to be a jury determination when complained of harassment is caused by a co-employee).

### C. Constructive Discharge

"To prove constructive discharge, a plaintiff must show that the conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." *McElroy v. Fid. Investments Institutional Servs. Co.*, 298 F. Supp. 3d 357, 369

7

(D.R.I. 2018) (internal quotation marks and citations omitted); *see also EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 134 (1st Cir. 2014) (holding that working conditions must have been so intolerable that the employee's decision to resign was "void of choice or free will"). "The standard to use to determine whether a reasonable person would have felt compelled to resign is an objective one—an employee's subjective perceptions do not govern." *McElroy*, 298 F. Supp. 3d at 369. "The fact that the plaintiff endured a hostile work environment—without more—will not always support a finding of constructive discharge." *Luciano v. Coca-Cola Enterprises, Inc.*, 307 F. Supp. 2d 308, 321 (D. Mass. 2004). A plaintiff must show "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment" and "the jury must find that the working conditions were so unpleasant that 'staying on the job while seeking redress [would have been] intolerable.'" *Id.* (quoting *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 28 (1st Cir. 2002)).

The evidence before the Court does not support a finding that Mr. Davis' conditions of employment had become so unpleasant that staying on the job while seeking redress would have been intolerable or that a reasonable person in his position would have felt compelled to resign. Mr. Davis asserts that he was forced to resign because Dominion refused to act after he reported he could not work with Mr. DiBiasio. (ECF No. 43). Although Mr. Davis was disappointed with the response received from Ms. Lavoie and Ms. Machado, Dominion kept Mr. Davis' position open well after the expiration of his FMLA leave. And, during this time,

8

Dominion sent Mr. Davis multiple letters seeking his return to Dominion's workplace but received no response. (ECF No. 39). The inaction of Ms. Lavoie and Ms. Machado may be enough to support his hostile work environment claim. But for the higher constructive discharge standard, a reasonable person would have expected Mr. Davis to engage with Dominion while on leave. His constructive discharge claim therefore cannot survive as a matter of law.

### D. Disparate Treatment

Mr. Davis claims that he was subjected to disparate treatment based on his race due to Dominion's failure to promote him for the Manager of Customer Support. (ECF No. 43).[4]

A claim of disparate treatment is a claim of intentional discrimination. *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). Without direct proof of discrimination, "the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] analysis [requires] a plaintiff [to] establish a prima facie case, which in turn gives rise to an inference of discrimination."[5] *Kingori v. Citizens Fin. Grp., Inc,* No. CV 18-340-JJM-LDA, 2020 WL 5517643, at *5 (D.R.I. Sept. 14, 2020). Once the

---

[4] Mr. Davis also alleges that similarly situated individuals, including Mr. DiBiasio, were treated more favorably than him by being assigned less work from Ms. Lavoie. ECF No. 43 at 21-22. The Court does not find sufficient evidence for him to establish disparate impact on these grounds. It is undisputed that after complaining to Ms. Lavoie a rotational schedule was implemented to assign tasks evenly. ECF No. 39 at 10, ¶ 85.

[5] The Court looks to federal law construing analogous civil rights statutes in assessing discrimination claims under RICRA. *See Colman v. Faucher*, 128 F. Supp. 3d 487, 491 n.8 (D.R.I. 2015) ("The Rhode Island Supreme Court analyzes [RICRA] claims using substantive federal law from analogous causes of action.").

plaintiff proves a prima facie case, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its decision. *See Id.* at 5-6 n.6. Thereafter the plaintiff then must show that the employer's stated reason is a pretext for discrimination. *Id.*

To state a prima facie case for discrimination under 42 U.S.C. § 1981, the plaintiff must show: "(1) [he is] a member of a protected class; (2) [he is] qualified for [his] job; (3) [he] suffer[ed] an adverse employment action at the hands of [his] employer; and (4) [there is] some evidence of a causal connection between [his] membership in a protected class and the adverse employment action." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 313 (1st Cir. 2016) (alterations in original) (quoting *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011)). For efficiency in analyzing Mr. Davis' claim, the Court will assume that he has met the burden of showing a prima facie case. *See Afolabi v. Lifespan Corp.*, No. CV 14-191-JJM-LDA, 2019 WL 2224893, at *8 (D.R.I. May 23, 2019).

The burden of production then shifts "to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010). To satisfy this burden at the summary judgment stage, a defendant-employer needs to produce "enough competent evidence, *taken as true*, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action[.]" *Bonilla-Ramirez v. MVM, Inc.*, 904 F.3d 88, 94 (1st Cir. 2018) (quoting *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 248 (1st Cir. 1997)). "The explanation

provided must be legally sufficient to justify a judgment for the [employer]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

"If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected [action]." *Hodgens v. Gen'l Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998). In considering evidence of pretext, the Court must focus "on the perception of the decisionmaker [employer] . . . and whether this perception was credible and reasonable." *Gray v. New England Tel. and Tel. Co.,* 792 F.2d 251, 256 (1st Cir. 1986). "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive [].'" *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990)).

Dominion has articulated a legitimate, nondiscriminatory reason for not promoting Mr. Davis: it was a business decision to promote Ms. McKenna to Manager of Support Services to avoid another layoff and retain an employee who Dominion valued. (ECF No. 38). Mr. Davis challenges this reason, citing his managerial experience as a superior qualification. (ECF No. 43). Additionally, Mr. Davis asserts he was passed over for this position because it required supervising Mr. DiBiasio, whose racist conduct he complained of. But, in order to show

11

pretext, Mr. Davis "must do more than cast doubt on the rationale proffered by" Dominion;, "the evidence must be of such strength and quality as to permit a reasonable finding that the . . . [action] was obviously or manifestly unsupported.'" *Ruiz*, 124 F.3d at 248 (quoting *Brown v. Trs. of Bos. Univ.*, 891 F.2d 337, 346 (1st Cir. 1989) (internal quotation marks omitted)). The Court finds that the evidence is not of the strength or quality to suggest that Dominion's reason for its failure to promote Mr. Davis was a pretext for discrimination. Summary judgment on this claim in favor of Dominion is thus granted.

## IV.   CONCLUSION

For the reasons stated, the Defendant's Motion for Summary Judgment (ECF No. 38) is GRANTED as to the Plaintiff's claims of constructive discharge and disparate treatment and is DENIED as to the Plaintiff's claim of hostile work environment.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

September 25, 2020